(C. D. 1958)

S. P. SKINNER CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 21, 1958)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Henry J. O'Neill,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: This case presents the question of the proper tariff classification of an item of merchandise described on the invoice accompanying the entry herein as "A.18 Log Fires."

Upon importation, said articles were classified as household utensils, composed wholly or in chief value of iron, within the purview of paragraph 339 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 339), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and duty was imposed thereon at the rate of 20 per centum ad valorem.

Plaintiff contends that the log fires should properly have been classified as articles having as an essential feature an electrical element or device in paragraph 353 of said act (19 U. S. C. § 1001, par 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, for which duty at the rate of 13¾ per centum ad valorem is provided.

For ready reference, we here set forth the competing provisions of the statute:

Paragraph 339, as modified, *supra*—

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for * * * :

\* \* \* \* \* \* \*

 Not plated with platinum, gold, or silver, and not specially provided for:

\* \* \* \* \* \* \*

 Other:

\* \* \* \* \* \* \*

 Composed wholly or in chief value of iron, * * * _ 20% ad val.

Paragraph 353, as modified, *supra*—

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Other (except the following: \* \* \* )_____ 13¾% ad val.

At the trial of this case, Stannage P. Skinner, chairman of the board of the plaintiff corporation, was the only witness called to testify on behalf of plaintiff. No witnesses appeared for the Government.

Skinner, who had been connected with the importer herein for 35 years and was familiar with the various items of merchandise handled by his company and who stated specifically that he was familiar with the "A. 18 Log Fires" before the court, identified a sample of the imported articles which subsequently was received in evidence as plaintiff's exhibit 1.

He described the articles as being composed of iron which is somewhat translucent in nature and which has been formed and decorated to imitate logs. Together therewith, an electric socket, bulb, cord, switch, plug, and a spinner were imported.

He testified that the combined article is decorative in nature because it simulates a log fire, which is its sole function. The spinner, previously referred to, is placed on top of the electric bulb which, when heated for about 60 seconds by the electricity coursing through it, causes the spinner to revolve, aiding in the function of imitating or simulating a live or real log fire. The electrical parts which have been enumerated have no use whatsoever other than the sole function for which the article was designed. The electrical parts function all the time that articles like exhibit 1 are in use.

Skinner testified that the log fire would have no appeal whatsoever as an ornamental or decorative item without the electrical parts, admitting, however, that when exhibit 1 is not electrically operated, it would give the effect of four or five logs of wood in a fireplace. In such latter event, the witness stated, he believed the article would then be without any effect and it would not be ornamental or salable.

Skinner testified that articles like exhibit 1 are used chiefly in the home, but are also used in hotel lobbies and other places.

On cross-examination by Government counsel, plaintiff's witness testified as follows:

X Q. In your opinion, as it is lighted up and you come into a room where it is in operation, would you say that you get the feeling of warmth and comfort?— A. I would say it is a nice feeling of comfort. It is very nice to sit around a fireplace that has a little scintillating effect. It is next door to a nice log fire.

X Q. And the members in the family would be reacting in a similar manner?— A. Yes, it gives cheer.

On redirect examination, Skinner testified that the log fires do not supply any heat to a room, their sole purpose being for the ornamental or decorative effect which they produce when in use.

In the determination of the case before the court, two questions must be resolved, namely, (1) are the imported log fires household utensils within the tariff connotation of that term, and (2) are they essentially electrical articles within the purview of paragraph 353 of the tariff act?

What constitutes a household utensil within the purview of paragraph 339, *supra*, has been the subject of many judicial decisions in this and our appellate court. As was aptly stated in *Pramette Juvenille Furniture Co.* v. *United States*, 36 C. C. P. A. (Customs) 61, C. A. D. 398—

The words "household utensils" as used in paragraph 339, *supra*, have been consistently construed by this court to refer to articles which serve a utilitarian purpose and are chiefly used in the household for the care and maintenance of the home for the convenience and comfort of its members.

It appears to be the contention of the defendant in its brief that since it was admitted by plaintiff's witness on cross-examination that a log fire, when in use, provides a "nice feeling of comfort" and would give cheer to the members of a family that said log fire is utilitarian in purpose. In support of that position, reference is made to the case of *Heemsoth & Basse* v. *United States*, 72 Treas. Dec. 385, T. D. 49191, wherein certain bird cages were held to be household utensils within the purview of paragraph 339 of the Tariff Act of 1930.

We cannot subscribe to the argument of defendant, for the reason that the test for classification of an article as a household utensil is not predicated upon the fact that, even though chiefly used in the household, it provides convenience and comfort to its members, or even that it assists in the care and maintenance of the household, but must be measured on the primary basis of whether or not it serves a utilitarian purpose.

In the *Heemsoth* case, above referred to, the court stated:

It is a matter of common knowledge of which this court may take judicial notice that the presence in the home of a singing canary bird in a cage contributes to the cheer and enjoyment of the occupants. Whether plain or ornamental the only use made of a bird cage, such as those involved herein, is the *utilitarian purpose* of containing such a bird. We cannot conceive that an empty cage would be used solely for ornamental or decorative purposes. [Italics supplied.]

In the case before us, we have the uncontradicted testimony that the log fires in issue serve no utilitarian purpose and that, when in use, they are merely decorative in function. We are of the opinion, therefore, that the articles in controversy are not household utensils within the meaning of paragraph 339 of the tariff act.

The next question to be considered is whether the imported log fires are articles having as an essential feature an electrical element or

device within the scope of paragraph 353 of the tariff act, as modified, *supra*, as contended by plaintiff herein.

The evidence discloses that, in addition to the imitation logs of translucent iron, the imported articles have as essential components an electric socket, cord, switch, floor plug, bulb, and spinner, which latter articles are necessary to the operation of the log fires when in use.

The provision of paragraph 353 relied upon by plaintiff herein specifies as exemplar articles electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs. Defendant contends that a log fire is not an article "such as" those provided for in this provision of the paragraph.

In the case of *John A. Steer & Co.* v. *United States*, 24 C. C. P. A. (Customs) 293, T. D. 48737, in deciding that an anhydrous ammonia plant was not within the purview of paragraph 353 of the tariff act, for the reason that the apparatus there in issue could be operated with any kind of power which was available, either electric, steam, or water power, and that the two electrical heaters which accompanied the device were merely to start a desired reaction and were not thereafter used during the operation of the ammonia plant, the court made the following statement:

In the *Dryden Rubber Co.* case, *supra* [22 C. C. P. A.] (Customs) 51, T. D. 47050, we gave it as our view that the rule of *ejusdem generis* should be applied in classifying articles under this paragraph. Obviously the applicability of such a rule is more apparent in said paragraph 353 than in the ordinary application of the rule of *ejusdem generis*. Here the law recites a number of devices which shall be taken as examples of the machines or devices which the Congress sought to be included within the purview of this division of paragraph 353. It states: "* * * *such as* electric motors, fans, locomotives, portable tools", etc. [Italics supplied.] As we have before stated in the *Dryden Rubber Co.* case, *supra*, while these articles thus named differ much from each other, still they are typical of the congressional intent. So, in measuring the applicability of the language of said paragraph 353 to the imported apparatus, we must have in mind whether the imported apparatus is of the type or types named in the statute. Is an anhydrous ammonia plant of the size and character of the one here involved *ejusdem generis* with articles such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs? We are unable to see anything in common between them. The particular devices which are named in the statute as exemplars, are devices which are operated electrically, and which are able to function because of their electrical elements. * * *

The record before us discloses that the electrical parts of the log fires before the court are elements or devices which constitute electrical features necessary to enable the imported articles to perform the primary function for which they were designed and intended, namely, to imitate or simulate a real or live log fire. It follows, therefore, that said log fires are "devices which are operated electrically, and which are able to function because of their electrical elements," as stated in the *Steer* case, *supra*.

This construction of the application of the principle of *ejusdem generis* to the articles named in paragraph 353 finds support in the fact that, by trade agreement, batteries and television apparatus, *inter alia*, have been specifically itemized as entitled to reduced rates of duty within the purview of said paragraph. Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*. Whereas said articles are not *ejusdem generis* in a narrow and limited sense to any of the varied exemplars named in the third subdivision of paragraph 353 of the basic act, namely, "such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs," batteries and television apparatus are *ejusdem generis* with the articles initially enumerated in that they are of the type or class of articles which have as an essential feature an electrical element or device.

Accordingly, it is our view that the "A.18 Log Fires" in issue should properly have been classified as articles having as an essential feature an electrical element or device within the purview of paragraph 353 of the Tariff Act of 1930, as modified, *supra*, and subjected to duty at the rate of 13¾ per centum ad valorem, as alleged by plaintiff. The claim in the protest to that effect is, therefore, sustained.

Judgment will be entered accordingly.